Isidore Levine, J.
After a grueling, hotly contested, paternity hearing, which consumed five full afternoons of actual trial, an order of filiation was ultimately made, following which two additional half-day hearings were held, finally culminating in a consent order of support for the child in the sum of $350 per month commencing September 4, 1971, and increasing to $400 per month when the child attains age 4.
Presented now to the court are the following remaining issues for disposition, some of which are not novel in other areas of the law, but which have no specific statutory or cited case law precedent under the Family Court Act which has only been in effect since 1962, a period of less than 10 years.
1. The application of petitioner’s attorney for $15,000 counsel fees, plus disbursements advanced by him for subpoenas and subpoenas duces tecum.
2. Petitioner’s application for reimbursement for witness fees in the sum of $150 advanced by her to the physician who testified for her at the trial and fees advanced by her to an accountant in the sum of $250 for pretrial preparation and $100 for attendance of said accountant at the trial as a proposed witness, although not actually used since the support issue was settled and agreed upon during trial just before the said accountant was called to the stand.
3. Petitioner’s application for payment of her still unpaid expenses incurred in connection with her pregnancy and confinement, in the sum of $675.
4. Petitioner’s application for payment of medical bills incurred by her for pediatric care of the child after birth in the sum of $200, of which $35 still remains unpaid for treatment of the child’s turned out foot.
*10 5. Petitioner’s application for payment of the unpaid bill of $75 due the orthopedist for putting a cast on the child’s foot.
Issue No. 1. While there was much controversy over the time consumed by petitioner’s attorney, the court finds from its own observation-on the trial dates themselves that petitioner’s counsel was actually in court a total of approximately 30 hours in connection with the initial trial on the issue of paternity and the succeeding hearings on the issue of support, including the few hours reflected on the court’s chronological records on days when the said attorney was in court prior to the commencement of the paternity trial, when for reasons varied and sundry, the case did not proceed to trial.
With respect to time consumed by petitioner’s counsel outside the court, his testimony unsupported by time sheets and records, but based upon his notes and recollection was that he expended approximately 50 hours. Critical and effective cross-examination with respect to time consumed in connection with the support portion of the trial, based as heretofore indicated on notes and estimates, unsupported by time sheets, revealed a possible error of 20% in time estimation. Projecting this possibility of error to the entire estimate of time consumed, the court finds that 40 hours of legal time consumed out of court would be a reasonable conclusion and finding, considering the length and intricacies of the trial itself which would have required such pretrial time-consuming preparation in connection with the finding of paternity and thereafter in -securing the order of support.
Having thus found that petitioner’s attorney has expended 30 hours in court and 40 hours out of court, the court now turns to the criteria for fixation and determination of fees. In this connection the court refers to an article, ‘ ‘ Fee Schedules Should Be Abolished ” by Richard J. Arnould and Robert N. Corley, in the American Bar Association Journal of July, 1971, page 655, where the following factors were set forth in determining fees at page 658:
1. Time involved;
2. Nature of the difficulty and novelty of the problem;
3. Amount of money or other interests involved;
4. Attorney’s professional standing;
5. Benefits sought for the client;
6. Attorney’s opportunity cost;
7. Attitude of the profession toward the type of litigation;
8. Responsibility assumed by the attorney in the case;
9. Probability of success for the client;
*11 10. Necessity of the counsel’s service ;
11. Client’s ability to pay.
In this connection see Matter of Burk (6 A D 2d 429, 430 [1st Dept., 1958]) where the court stated: ‘ ‘ The relevant factors are the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel, and the results achieved.” (See, also, Matter of Potts, 213 App. Div. 59.)
To all of the above criteria the court would like to add its own additional criterion, to wit, the contingency nature of the fee herein, under which petitioner’s counsel had agreed with petitioner that he would be paid only if he were successful, and that petitioner was to pay him nothing for his services since she was financially unable to pay, which fact the court so finds.
Considering the services rendered by petitioner’s attorney in the light of the above criteria and all the other relevant and pertinent facts hereinafter referred to, the court allows said attorney the sum of $60 per hour for court time or approximately $400 per day in court based upon a 6%-hour court day. In this connection the court has taken into consideration the standing and trial experience of counsel at the Bar which has merited, according to his testimony, regular noncontingent trial fees of $300 per day as a trial specialist. Certainly, on a contingency basis he would be entitled to at least $400 per day. Such fees would hardly be excessive when we consider that, in the field of negligence contingent trial fees, and even contingent fees where cases are settled before trial and even in many cases in claim before institution of suit, plaintiffs’ counsel receive contingency fees far in excess of $60 per hour expended.
The court has also taken into consideration petitioner’s attorney’s professional standing at the Bar as the Chairman of the Family Court Committee of the New York State Trial Lawyer’s Association and as a member of the Panel of Matrimonial Lawyers of the Association of the Bar Referral Panel, and the fact that he has tried 30 to 40 matrimonial cases.
Moreover it should be noted that petitioner’s attorney was opposed by a most formidable attorney who is a recognized expert in the field of paternity and the author of the leading authoritative textbook on paternity law. Clearly success against such an opponent was not easy to achieve.
In terms of the other criteria suggested by the American Bar Association Journal of July, 1971, the amount of money involved and the benefits sought for the client were extremely great, since hanging in the balance was the obligation for support of *12 a child for 21 years. Clearly the attitude of the profession toward such an effort on behalf of a child is most favorable and the responsibility assumed by counsel in such a case is a very heavy and necessary one. See, also, this court’s own decision in Harvey v. Harvey (62 Misc 2d 246 [1969]) wherein the court referred to the memorandum of the Special Committee on Matrimonial Law of the Association of the Bar of the City of New York to the Présiding Justices and Associate Justices of the Appellate Division, First and Second Departments, which appeared in the New York Law Journal on June 30, 1969 (p. 1, col. 8) and which deplored the inadequacy of counsel fees in matrimonial proceedings. Particularly pertinent is the statement therein that ‘ ‘ the statutory awards presently being made are inadequate and even these inadequate awards are being reduced on appeal. Neither do the judges seem to be aware of the compensation explosion which has occurred in most of New York’s law firms and which has required an increase in time charges to cover the cost of associates’ raised salaries.” (62 Misc 2d 246, 251.)
The court knows of its own experience that operating costs of running a law office approximate 50% of gross income and more. In view of the foregoing, the court considers the counsel fees allowed herein to be most fair and reasonable and are intended to represent minimum fees under the circumstances herein and not maximum fees,- subject at all times to respondent’s ability to pay.
Totaling the counsel fees allotted by the court in the light of the foregoing criteria, we find that the petitioner’s attorney is entitled to trial fees of $60 per hour multiplied by 30 hours, totaling $1,800, and $40 per hour minimum multiplied by 40 hours for time consumed out of court, totaling $1,600, making a gross total of $3,400 in counsel fees, to which should be added $86.50 expended and advanced by petitioner’s counsel for necessary subpoena and subpoena duces tecum fees, totaling in all the sum of $3,486.50, which sum the court finds the respondent is able to pay.
An examination of the 1969 corporate tax return of the respondent’s business, which he operated as a Subchapter S corporation in which he was the sole stockholder, for the period ending November 30, 1970, reveals that the respondent was able to reduce his own loan to the business by almost $3,000. Reference is made to the schedule submitted by the corporation, indicating additional income to him from the said corporation, almost sufficient alone to pay the counsel fees and disbursements herein.
*13 Moreover, the respondent complained bitterly at the trial that the petitioner, who had moved in with him and who conducted herself in all respects as his wife for many months, albeit without benefit of clergy, ran up tremendous bills for him at some of the most expensive shops on Fifth and Madison Avenues and on 57th Street, as well as enormous telephone bills, all of which he had to pay, which said bills he will no longer have to pay. Compared to these bills, the respondent’s obligation for the support of his child is but a pittance.
Issue No. 2. Petitioner’s application for reimbursement for witness fees paid by her to her physician in the sum of $150 for trial testimony and for reimbursement of a total of $350 paid by her to her accountant for pretrial and proposed trial testimony is denied.
Nothing contained in the Family Court Act authorizes such allowances, nor can any sanction be found in the CPLR which comes into play where no method of procedure is prescribed by section 165 of the Family Court Act.
Said section 165 of the Family Court Act is found under article 1 entitled “ Family Court Established ”, Part 6 thereof, entitled 1 ‘ General Provisions Concerning Hearings ’ ’, and reads in part as follows: “ § 165. Procedure. * * * Upon the effective date of the CPLR, where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed, the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved.” (Emphasis added.)
It would appear therefrom that section 165 of the Family Court Act which under certain circumstances might be applicable to the Family Court is restricted solely to procedural matters in the Family Court where no specific provision appears therein, and not to substantive matters such as granting of disbursements for professional witnesses at trial.
Moreover, CPLR art. 83 (8301, entitled ‘ ‘ Taxable Disbursements”, subd. [a]) provides as follows: “ (a) Disbursements in action or on appeal. A party to whom costs are awarded in an action or on appeal is entitled to tax his necessary disbursements for * # * 12. such other reasonable and necessary expenses as are taxable according to the course and practice of the court, by express provision of law or by order of the court.” (Emphasis added.)
While at first blush it might appear that the said paragraph 12 might be authority for such payment of disbursements by *14 order of the court, it should be noted that the section presupposes a situation where costs are awarded, which situation is not covered by the Family Court Act except in one instance, namely section 460, which provides for discretionary costs of $10 upon the entry and docketing of a money judgment for arrears, or part thereof, upon default of a party against whom an order for payment of a sum of money has already been made under one or more of the specific subdivisions thereunder — which is not the situation herein. Nothing contained in the case of Janusz v. Fallon (61 Misc 2d 608 [1969]) is to the contrary since this latter case arose in the City Court of Utica, in Oneida County, which said court has substantive provisions for the imposition of disbursements for expert witnesses where costs are permitted to be taxed, and hence this case is wholly consistent with the position taken in the case at bar.
Accordingly since there is neither procedural nor substantive authority under the Family Court Act for the reimbursement to petitioner of professional witness fees advanced, the court cannot legislate by judicial fiat where no issues of constitutional rights are involved; and therefore, the application for reimbursement herein must be denied.
Issue No. 3. Petitioner’s application for payment of her still unpaid expenses in connection with her pregnancy and confinement in the sum of $675 is granted. (Family Ct. Act, § 545.)
Issue No. 4. Petitioner’s application for payment of medical bills incurred by her for pediatric care of the child after birth, in the sum of $200, of which $35 remains unpaid, for treatment of the child’s turned out foot, is granted to the extent of $200. Section 545 of the Family Court Act authorizes the court in its discretion to direct the respondent to pay for the support of the child prior to the making of the order of filiation. Since the child herein was born on May 23,1970, the court would have the right to require the respondent to pay retroactive support for the child from that date to April 27, 1971, the date of the temporary order, but in view of the entire picture herein, and in the exercise of its discretion, will direct the respondent to pay only the $200 to reimburse petitioner for the pediatrician’s fee, and the $75 for which petitioner seeks reimbursement in the next paragraph totaling $275 in lieu of retroactive support which the court might have ordered.
Issue No. 5. Petitioner’s application for payment of the unpaid bill of $75 due the orthopedist for putting a cast on the child’s foot is granted, as indicated by the prior paragraph.
Recapitulating the order herein, respondent is directed to make payments as follows:
*15 Cinder Issue No. 1.
$1,750 directly to petitioner’s attorney on or before November 1, 1971
1,736.50 directly to petitioner’s attorney on or before March 1, 1972
Total............... $3,486.50
Under Issue No. 2. None.
Under Issue No. 3. $675
Under Issue No. 4. 200
Under Issue No. 5. 75
Total ............... $950 on or before January 1, 1972 directly to petitioner.