Isidore Levine, J.
After a hotly contested trial, covering portions of approximately nine days of actual testimony, spanning a period of about 10 months, and following a finding of paternity, whose ramifications ¡were such as to impel the court to write a 21-page opinion (Matter of Colmand v. Dailey, 79 Misc 2d 1005), the court on December 3, 1974, immediately following the completion of the support and counsel fee portion of the controversy, rendered a decision off the bench granting petitioner $40 per week for the support of the child and $1,000 counsel fee plus disbursements of $64 ¡making a total of $1,064, to petitioner’s attorney, despite his affirmation of services which clearly indicates his time consumed of 59 hours, confirmed by court records, for which he requested $75 per hour, which totals out to $4,425.
As will be reflected by the court’s oral decision, dictated into the record, the court found then, as it does now, that petitioner’s attorney fully earned the fee requested (see criteria listed in Matter of Miller v. Cole, 68 Misc 2d 8), based not only upon the time consumed by him, but also upon the thoroughness and the professional and painstaking handling of his case, presenting his evidence, both oral and written (note that there are 19 documents or other pieces of evidence, marked in evidence on behalf of petitioner), until finally a completed picture was presented, from which the inescapable conclusion was drawn from such clear and convincing and entirely satisfactory evidence that the respondent and no one else was the father of the child in question.
The court further stated in its oral decision that despite the fact that it felt that petitioner’s attorney had fully earned the *135 $4,425 requested (59 hours at $75 per hour, which sum the court believes is fair and reasonable for the calibre of services rendered herein by petitioner’s attorney) it could not grant him such fee since the court was constrained and compelled by the cardinal rule of family and paternity law, that it cannot make an order beyond the respondent’s demonstrated ability to pay same. As a consequence, with great regret, the court only allowed petitioner’s attorneys the sum of $1,000 plus the return of his $64 disbursements, and directed that same be payable at the rate of $164 commencing one month hence and then $100 per month thereafter until the entire sum of $1,064 is paid.
Following this decision, the court has agonized greatly. On the one hand I had found that the petitioner’s lawyer had performed a highly professional job, and had clearly earned his fee, but on the other hand I found that the respondent did not have the present ability to pay same beyond the $1,064 I had ordered in monthly installments. However, upon reflection, it is undisputed that the respondent is in 'his own business, and has been for several years, presently hiring three employees plus a bookkeeper, whose salaries, he claims, are the same as his drawings (significantly the bookkeeper he states, receives $10 more per week than he does). Clearly the respondent hopes for better days financially or he would cut down ,on his staff. From everyone’s point of view it is hoped that he will. But how about petitioner’s attorney! If respondent’s financial picture improves, he will have more money, petitioner may seek an increase in support for her child, but petitioner’s attorney will be left holding the proverbial bag. This seems grossly unfair, but how can the court make an order beyond the respondent’s present ability to pay, since the court is mindful that failure to pay Family Court orders very often leads to incarceration, if it be determined that such default be willful.
The court has researched the question of counsel fees in Family Court proceedings in the past and indeed has coauthored an article on this subject which has appeared in the New York Law Journal on February 21,1974, February 22,1974 and February 25, 1974. It does not believe that there is any prior decision or legal article directly in point, and, accordingly, the point of view now about to be expressed by the court appears to be novel.
Equitably there appears to be no reason why petitioner’s attorney should not be awarded additional counsel fees which he has clearly earned, but his remedies for collection of same should be similar to those afforded creditors in ordinary civil *136 actions. For this position there is ample precedent. For example, when petitioner wife or former wife seeks to enforce or modify matrimonial decrees of divorce, separation or annulment, which incorporate separation agreements which survive said decrees, whether domestic or foreign, the Family Court, where the financial circumstances of the respondent require same, will award a lesser sum to petitioner and will permit collection or enforcement thereof by utilization ,of the special sanctions available in the Family Court, and without impairing or violating the obligations of a contract, leaving the collection or 'enforcement of any balance due between the Family Court order and the amount provided by the separation decree to be pursued in the civil courts, with its limited facilities for collection.
So, too, in initial Family Court proceedings for support by a wife, where the parties have entered into a valid separation agreement which respondent is found unable to pay, the Family Court can only make an order commensurate with the respondent’s ability to pay, and relegate petitioner wife to the civil courts for collection of the balance between the Family Court order and the amount provided by the separation agreement.
In line with this type of precedent and reasoning it appears that the court should have the power to grant an amount of counsel fee in excess of what the respondent appears to be presently able to pay, but provide that arty such excess above the amount found by the court to be presently within the financial ability of the respondent to pay, be oollectible only by such court processes as are available outside the Family Court System.
Based upon such logic the court finds that it should have awarded petitioner’s counsel the sum of at least $4,000. However, in paternity proceedings counsel fees, as well as support, can be prorated between petitioner and respondent in accord-ace with their respective abilities to pay. (See Matter of Sarah S. v. John K., 70 Misc 2d 803.) Section 563 of the Family Court Act provides in part as follows: “ If the court enters an order of filiation, it may apportion the cost of the support and education of the child between the parents according to their respective means and responsibilities.” Counsel fees have uniformly been held to be an item of support for either a wife or child in a support proceeding.” (See Bienstock v. Bienstock, 219 N. Y. S. 2d 395; Shenker v. Shenker, 14 Misc 2d 980; and Matter of Kaufman, 297 N. Y. 814.) It will be noted for the purpose of apportionment that while petitioner is not presently working, she had been earning until recently slightly in excess *137 of $100 per week, as compared to respondent’s alleged income from all sources of about $275 pe.r week.
Considering the respective earnings and/or potential earnings of the parties, the court finds that respondent should pay a total of $3,000 in counsel fees plus $64 disbursements since petitioner would be chargeable in the sum of $1,000 by reason of such legally required proration even if not due or collectible for whatever reason, with specific provision that all of such counsel fees shall be collectible only by proceedings outside the Family Court, with the exception as originally directed by the court in its decision of December 3, 1974 that Family Court sanctions be applicable only to the $1,064 in counsel fees ordered against the respondent at that time, in the manner therein provided.