Edith Miller, J.
The petitioner and the respondent were married on March 16, 1942. On May 1, 1958 they entered into a separation agreement and on May 12, 1959 the parties were divorced in Chihuahua, Mexico. The decree of divorce incorporated by reference the nonmerger separation agreement which provided for $260 monthly support for the petitioner plus $400 on April 1 of each year to cover any taxes due and owing. At this time, the respondent is current in his payments and there is no need for an order of this court with respect to enforcement of the contractual agreement. However, it is the contention of the petitioner that her “ minimal needs ” are now $800 per month, that the respondent’s income has increased, and that unless the court grants an order in that amount pursuant to subdivision c of section 466 of the Family Court Act that she is in danger of becoming a public charge.
This set of facts requires the application of the rule promulgated by the Court of Appeals in McMains v. McMains (15 N Y 2d 283, 284-285) where the court held “ that a separation agreement valid and adequate when made and which contains a non-merger agreement continues to bind the parties when its terms as to support have been written into a subsequent divorce judgment but that this does not prevent a later modification increasing the alimony when it appears not merely that the former wife wants or by some standards should have more money but that she is actually unable to support herself on the amount heretofore allowed and is in actual danger of becoming a public charge.”
It may conceivably be argued that, in view of the language used in other portions of McMains, the true criterion conveyed by the decision is inadequacy for basic support, particularly because of conditions of health, together with the absence of other sources. It may be contended further that the phrase “ is in actual danger of becoming a public charge ” is intended merely to set forth an a fortiori case for modification and is not intended to preclude modification in other cases where justice may require.
There is some support for these arguments indicated in such cases as Apkarian v. Apkarian (39 A D 2d 609) where the court appeared to be ambivalent as to what the McMains standard really was; and in Roscini v. Roscini (41 A D 2d 895) where the court held McMains stood for the principle of minimum support.
*363 This court, however, is of the opinion that the better rule and the weight of opinion is with those cases that hold McMains to a literal interpretation of the “ public charge ” language. (See Slocum v. Slocum, 42 A D 2d 56, 58; Chesta v. Chesta, 74 Misc 2d 548, 550; Matter of Aranow v. Aranow, 57 Misc 2d 86, 89; and most particularly Gardner v. Gardner, 40 AD 2d 153, affd. 33 NT 2d 899.) In the latter case (p. 155), by way of denying modification of the alimony provisions of a Mexican judgment of divorce where the separation agreement was incorporated but not merged, the court held ‘ ‘ we are constrained by the language of McMains, to hold that, when a valid separation agreement was in effect, Family Court could not find a ‘ change of circumstances ’ and a requirement for modification without a showing that petitioner was unable to support herself on the amount allowed and was in actual danger of becoming a public charge.”
It is the judgment of this court that at the hearing on the merits, petitioner failed to sustain her burden of proving as part of her prima facie case that she was in such danger of becoming a public charge so as to justify modification. The bulk of petitioner’s claims are predicated on her ill health (special diet, medical bills, inability to maintain employment, etc.). Yet petitioner failed to introduce satisfactory medical evidence as required by law to support her allegations. The court further notes that, for a woman without means, and allegedly subject to continued ill health, the petitioner continued to seek out private medical care and made no attempt to inquire as to her eligibility for medicaid, or to obtain prepaid group health insurance which would have greatly mitigated her medical expenses. At the very least, the petitioner’s failure to pursue or inquire as to the various means of public assistance available to her during the 14 months she has supposedly been in dire need, casts some doubt on her credibility and the true urgency of her circumstances.
Furthermore, Mexico, unlike New York does not permit modification of its decrees. (Schoenbrod v. Siegler, 20 N Y 2d 403; Belt v. Belt, 67 Misc 2d 679.) In the matter herein, petitioner is asking the court to do what a Mexican court lacks the power to do. Therefore, in the opinion of this court, only a plain showing of the need to indemnify the public purse could justify entertaining such modification and petitioner has failed to establish such need.
Section 10 of article I of the United States Constitution provides that no State shall pass any law impairing the obligation of contracts. Prior to the McMains decision, a separa-
*364 tion agreement that was valid and adequate when made, equally bound the parties to the agreement regardless of a change of circumstances (Galusha v. Galusha, 116 N. Y. 635). In those hardship cases where the court saw fit to enforcé less than the contractual agreement, the wife could still proceed in a separate civil action for the difference (Goldman v. Goldman, 282 N. Y. 296) and the resulting judgment would be binding upon the husband and his estate. While the combined effect of the Galusha and Goldmcm cases may therefore have occasionally resulted in unfairness, it- at least provided certainty in that both the husband and wife and any subsequent wife would be aware of the exact liability of the husband. The parties were expected to foresee the possibility of a change of circumstances and to provide for escalation and de-escálation, at their option. If no .'.such provisions Were made, the wife could not obtain further support beyond the agreement nor could the husband reduce his obligation under it.
However, in the McMains case, the appellate court, recognizing the fact that New York courts could always modify its matrimonial judgments, permitted the modification of the judgment therein even though by so doing the actual result was to change the contractual terms of support, thereby indirectly impairing the agreement. When the court opened the door to permit modification of the judgment if it is shown not merely that the wife wants more money or needs more money but that “ she is actually unable to support herself on the amount heretofore allowed.and is in actual danger of becoming a public charge,” the appellate court introduced into a basic contractual situation a concept that has been vexing trial courts ever since.
In the first instance, this concept has created a -serious constitutional question concerning the denial of equal protection of the laws under the Fourteenth Amendment to the United States Constitution in respect to the respondent husband. The court notes that if the husband receives unemployment insurance benefits from public funds, if the husband becomes disabled, or his income is reduced because of advanced age, and he is partially or fully supported by . public funds of some sort, he still remains fully liable to the wife under the terms of the separation agreement. If the husband has acquired a second family and his resources cannot adequately cover both obligations, the first wifé is paramount whether or not she needs the money and even if public funds of some sort are needed to maintain the second family (Windwer v. Windwer, 33 N Y 2d 599). What cannot be collected from the husband during his lifetime will survive *365 to be a claim against his estate. His contractual obligation can never be reduced regardless of his need for and resort to public funds, yet his obligations may increase under the McMains ruling. This results in impairment of the contract rights of the husband while the contract rights of the wife remain inviolate. At a time when the new equal rights amendment to the United States Constitution is only five States short of ratification, it behooves us to look with care at all relationships to afford equal protection to the parties.
In the matter herein, the petitioner testified to her subjective needs but did not show that she is in imminent danger of having to resort to public welfare assistance or to some other type of public funds. It is the contention of the petitioner that this is not her burden. That once she has testified that her needs are in excess of her income that the court should therefore conclude that she is in danger of becoming a public charge. However, if the McMains ruling were so liberally interpreted it would encourage former wives such as the petitioner herein (who has been a single woman for the past 15 years without young children in her care), to never strive for independence, but rather to continue to look to the husband for support, thereby converting what was intended to be a cushion into an insurance policy. And as Judge Fuld observed in his dissenting opinion in McMains “ Certainly if the defendant’s means had not improved, the plaintiff would not be entitled to an increase, however unfortunate her circumstances.” (McMains v. McMains, 15 N Y 2d 283, 292.)
In view of the foregoing, although the court finds itself in complete agreement with Judge Ftjxd’s dissent in McMains, it must reluctantly follow the majority opinion and permit modification of the decree when the petitioner herein is willing to establish by objective standards, her right to upward modification.
The petitioner’s motion is dismissed without prejudice to a subsequent showing on clear and convincing evidence that she is indeed in danger of becoming a public charge. The court, in its discretion denies the application for counsel fees, inasmuch as petitioner has already paid her attorney $1,000. (Kann v. Kann, 38 AD 2d 545.)